James J. BARTLETT, Plaintiff,

v.

COMMERCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, OF OMAHA, NEBRASKA, a Federal Savings and Loan Association, Defendant.

Civ. No. 75–0–423.

United States District Court, D. Nebraska.

June 24, 1977.

David A. [illegible] ... Queens, Utah, ... [illegible]

[illegible] ... defendant

MEMORANDUM AND ORDER

GENSLER, District Judge.

This matter is before the court on the plaintiff's administrative appeal ... [illegible] ... the plaintiff ... [illegible] ... product ... plaintiff ... [illegible]

in favor of the defendant. The plaintiff alleges five separate violations of the Truth-in-Lending sections of the Consumer Credit Protection Act [the Act], 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. § 226.1 *et seq.*

15 U.S.C. § 1639 requires the disclosure in connection with consumer loans other than "open end credit plans"[1] of specific terms and charges for the extension of credit. 12 C.F.R. § 226.8 contains the implementing regulations by the Federal Reserve Board for this portion of the Act.

The transaction is evidenced by the following documents [Filing # 1]: A. the defendant's disclosure statement, B. the mortgage note executed by the plaintiff, as the borrower, to secure the loan, C. the mortgage loan commitment, D. the borrower's loan settlement statement and E. the mortgage agreement.

■ The plaintiff, in his second cause of action, alleges that the defendant's disclosure statement fails to set forth "a clear identification of the property to which the security interest relates" as required by 12 C.F.R. § 226.8(b)(5).[2]

The disclosure statement recites the address of the real property securing the loan and further states that "[t]he documents executed in connection with this transaction cover all after-acquired property . . ." The plaintiff asserts that this after-acquired property clause conflicts with state law, inaccurately describes the security interest and confuses borrowers.

Neb.Rev.Stat. § 9–204(4)(b) (Reissue 1971) of the Uniform Commercial Code as adopted in Nebraska restricts the scope of security interests which purport to cover after-acquired property. The section states that

(4) No security interest attaches under an after-acquired property clause : .

(b) to consumer goods other than accessions . . . when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value.

Under this provision, an interest in after-acquired property may reach consumer goods acquired by the debtor within ten days of the credit transaction; while such goods other than accessions acquired by the debtor thereafter are not subject to the lender's security interest.

The defendant contends that by use of the language "all after-acquired property" it did not seek or intend to take a security interest in any personal property or consumer goods. Instead, the defendant urges that when read in context, the language covers only additions, improvements or fixtures subsequently added to the mortgaged premises. In its brief, the defendant concedes that the phrase used is perhaps imprecise, but denies that borrowers would be confused.

Courts considering the question in the context of chattel mortgages have consistently ruled that disclosure of an after-acquired property clause without further explanation of the ten day limitation on personal property subject to the security interest misleads and confuses borrowers in violation of 12 C.F.R. § 226.6(c) and fails to comply with 12 C.F.R. § 226.8(b)(5), which calls for a "*clear* identification of the property" securing the loan. [Emphasis added.] *See Pollock v. Gen. Fin. Corp.,* 535 F.2d 295, 299 (5th Cir. 1976); *aff'd on Rehearing,* 552

1. *See* 12 C.F.R. § 226.2(x).

2. 12 C.F.R. § 226.8(b)(5) requires
A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, *and a clear identification of the property to which the security interest relates* or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a

security interest in such property which the creditor is unable to identify.
. . . If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, *this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.*
[Emphasis added.]

F.2d 1142, 1144–45 (5th Cir. 1977); *Tinsman v. Moline Beneficial Fin. Co.,* 531 F.2d 815, 818–19 (7th Cir. 1976); *Ecenrode v. Household Fin. Corp. of S. Dover,* 422 F.Supp. 1327, 1330–31 (D.Del.1976); *Willis v. Town Fin. Corp. of Atlanta,* 416 F.Supp. 10, 11–13 (N.D.Ga.1976); *Sneed v. Beneficial Fin. Co. of Hawaii,* 410 F.Supp. 1135, 1138–45 (D.Hawaii 1976); *In re Dunne,* 407 F.Supp. 308, 310–11 (D.R.I.1976); *Woods v. Beneficial Fin. Co. of Eugene,* 395 F.Supp. 9, 14–15 (D.Or.1975); *Johnson v. Assoc. Fin., Inc.,* 369 F.Supp. 1121, 1122–23 (S.D.Ill. 1974); *Kenney v. Landis Fin. Group, Inc.,* 349 F.Supp. 939, 950–51 (N.D.Iowa 1972). *See also* the opinion by Chief Judge Warren K. Urbom of this District in *Ballew v. Assoc. Fin. Serv. Co. of Neb., Inc.,* Civ.No. 75–L–119 (D.Neb.12/28/76), in which the court stated,

> The defendant argues that the financing statement confers no rights on the parties. That, however, does not lessen the attempt to mislead and confuse the borrower. I find that such clause violates § 226.6(c) of Regulation Z. *Id.* at 16.

Even if the Court were to agree with the defendant that in the context of a real estate mortgage and the disclosure notice read as a whole, the language "all after-acquired property" is unlikely to be understood as encompassing household goods, automobiles or other personal property, there is certainly no clear identification of the additional collateral the security interest is intended to cover. "Describing a security interest where there is none" has been held to be "additional and misleading information." *Ives v. W. T. Grant Co.,* 522 F.2d 749, 761 (2nd Cir. 1975).[3] By the defendant's own admission, the language used is inaccurate. Partial summary judgment will therefore be entered in favor of the plaintiff in his second cause of action.

The plaintiff's fifth cause of action asserts that the disclosure notice "does not accurately describe the terms of payment as required by 12 C.F.R. § 226.8(b)(3)," in that it fails to "disclose that full payment is due upon resale of the residence." The mortgage document provides that in the event of default, which includes "(d) . . . any change in the ownership of the real estate mortgaged herein by sale, either outright or by land contract, or by assignment of any interest thereon or otherwise,"

> then the whole indebtedness hereby secured shall, at the option of Commercial, immediately become due and payable without further notice, and the amount due under said note and any other note for additional advances made shall, from the date of the exercise of said option, bear interest at the maximum legal rate per annum, and this mortgage may then be foreclosed to satisfy the amount due on said note, and any other note for additional advances, together with all sums paid by Commercial for insurance, taxes, assessments and abstract extension charges, with interest thereon from the date of payment at the maximum legal rate.

The loan disclosure statement does not mention this provision for acceleration of the debt upon sale of the mortgaged premises.

■ 12 C.F.R. § 226.8(b)(3) requires disclosure of "the number, amount and due dates or periods" of "scheduled" payments and the "sum" or "total of payments," i. e.,

> [t]he number, amount and due dates or periods of payments *scheduled* to repay the indebtedness . . . . .

> [Emphasis added.]

As acceleration of the unpaid balance of the loan can occur only upon "default" as defined in the mortgage instrument, clearly the right to accelerate the obligation is not a "scheduled" payment within the meaning of 12 C.F.R. § 226.8(b)(3).

However, such acceleration or "due on sale" clauses have been discussed as possible "default" charges within 12 C.F.R. § 226.-

---

**3.** *Accord, Houston v. Atlanta Fed. Sav. & Loan Ass'n,* 414 F.Supp. 851 (N.D.Ga.1976).

This court has previously ruled that a disclosure statement which informs the consumer that the creditor claims a right he does not actually possess is "confusing and misleading" and constitutes a Truth-in-Lending violation. *Id.* at 856.

8(b)(4). Section 226.8(b)(4) requires disclosure of

> [t]he amount, or method of computing the amount, of *any default,* delinquency, or similar *charges* payable in the event of late payments.
>
> [Emphasis added.]

There is considerable controversy concerning whether a right to accelerate the debt in the event of default is a "default, delinquency, or similar charge" within the meaning of this provision.

In *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955, 959 (N.D.Ill.1972), the court defined "charge" as "obligation," "claim" or "pecuniary burden." In light of these definitions and the purposes of the Act "to inform consumers of credit costs and terms so they can effectively choose between sources of credit," the court construed the right to accelerate the balance of a debt as a "charge" within 12 C.F.R. § 226.8(b)(4).

The court in *Kessler v. Assoc. Fin. Serv. Co. of Hawaii,* 405 F.Supp. 122, 123–26 (D.Hawaii 1975), adopted the similar view that a "charge" refers to "any pecuniary burden or payment assessed by the lender upon default." *Id.* at 126. Therefore, the lender's right upon default to require immediate payment of all installments must be set forth in the disclosure statement.

In *Woods v. Beneficial Fin. Co. of Eugene, supra,* 395 F.Supp. at 15–16, the court decided that so long as no additional total financial cost is imposed, the right to accelerate the entire amount due is not a "default, delinquency or similar charge." However, a lender must disclose such a right in order to comply with the underlying policy of the Act to require "meaningful disclosure," 15 U.S.C. § 1601.

In the Ninth Circuit, acceleration charges must be disclosed. *See LaGrone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir. 1976); *Clausen v. Beneficial Fin. Co. of Berkeley,* 423 F.Supp. 985, 988–89 (N.D.Cal.1976).

In contrast to these decisions, the Fifth Circuit Court of Appeals has recently decided that "neither an acceleration clause nor the lender's rebate policy with respect to acceleration clauses must be disclosed under the Truth-in-Lending Act." *McDaniel v. Fulton Nat. Bank of Atlanta,* 543 F.2d 568, 569 (5th Cir. 1976), *citing Martin v. Comm'l Sec. Co., Inc.,* 539 F.2d 521 (5th Cir. 1976). In *Martin v. Comm'l Sec. Co., supra,* 539 F.2d at 526–29, the Fifth Circuit ruled that a creditor's right to accelerate the maturity date of a loan is not a "charge" but a contractual remedy, i. e., "a right which may or may not be exercised." *Id.* at 526. Even in the case of installment notes in which precomputed interest or finance charges are spread over the term of the loan, incorporated into the amount due per installment and accelerated with the principal, the lender need not disclose his right to accelerate the outstanding installments or his intention not to refund the unearned finance charges. *Id.* at 529. *Accord, Smith v. Avco Fin. Serv. of La., Inc.,* 542 F.2d 242, 243 (5th Cir. 1976); *Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 519 (5th Cir. 1976); *Grant v. Imperial Motors,* 539 F.2d 506, 508 (5th Cir. 1976).[4] The Tenth Circuit agrees. *See Begay v. Ziems Motor Co.,* 550 F.2d 1244, 1248 (10th Cir. 1977).

▮ This Court adopts the view of Chief Judge Urbom of this District in *Ballew v. Assoc. Fin. Serv. Co. of Neb., Inc., supra,* that a lender's acceleration clause, despite "the result [of] a shortening of the time for repayment," need not be disclosed, so long as no additional penalty is assessed or unearned interest retained upon acceleration of the principal.

> The clause thus gives the creditor the right to pursue his remedies without awaiting the expiration of the contract. Although there is a split of authority on this point, I conclude that in such circum-

---

4. *See also St. Germain v. Bank of Hawaii,* 413 F.Supp. 587, 594–604 (D.Hawaii 1976), in which the court held that "optional acceleration upon default by the creditor constitutes a subsequent occurrence' under § 226.6(g) of

Regulation Z," and disclosure is therefore not required. *Id.* at 604. This decision may have overruled *Kessler v. Assoc. Fin. Serv. Co. of Hawaii, supra.*

stances there is no violation of § 226.-8(b)(4) because no additional charge is made.

*Id.* at 11.

In *Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, 260–69 (3rd Cir. 1975), the Third Circuit Court of Appeals similarly concluded that only additional penalty charges or unrebated precomputed finance charges to be retained by the creditor in the event of acceleration must be disclosed. "The right to accelerate the unpaid principal is a remedy for default and is not an 'amount' in the sense that that term is used in section 226.8(a)(4)." *Id.* at 267. *Accord, Ecenrode v. Household Fin. Corp. of S. Dover, supra,* 422 F.Supp. at 1332–33; [5] *Cosby v. Mellon Bank,* 407 F.Supp. 233, 234–35 (W.D.Pa.1976); *Frank v. Reserve Consumer Discount Co.,* 398 F.Supp. 703, 705 (N.D.Pa.1975). *See also Williams v. Bill Watson Ford, Inc.,* 423 F.Supp. 345, 348–54 (E.D.La.1976); *Thompson v. Twin City Fin. Corp.,* 409 F.Supp. 924, 925–27 (W.D.La. 1976).[6]

Thus the question remains whether the defendant in this case has a contractual right to any additional charges, penalties or costs should it exercise its right to accelerate the outstanding principal upon the plaintiff's default. The note and mortgage instruments reflect two situations in which penalties are imposed, both of which are declared in the loan disclosure statement.

In the case of late payment, a delinquency charge of 4% of the monthly principal and interest payment will accrue, and the defendant may, during the period of delinquency, raise the interest charged to the maximum lawful interest rate.

In the case of prepayment, the notice provides that "[a] prepayment penalty of 1% of the original amount of the loan will be assessed if this loan is paid in full during the first five years." This provision was intended to cover voluntary prepayment of the principal before expiration of the thirty-year contractual period. However, should involuntary prepayment during the first five years result from exercise of the acceleration clause, presumably, the 1% fee could be charged. If this interpretation was intended, the disclosure statement could have been more precise by informing the borrower that a 1% penalty will be assessed if, during the first five years, default occurs and the defendant exercises its option to accelerate the loan. However, the Court finds that the language used in the disclosure notice is sufficient so long as no other penalty would be incurred by the plaintiff beyond the defendant's right to demand immediate payment of the outstanding balance of the principal, and possibly the 1% fee.

This seems to be the interpretation of the note and contract advanced by the defendant. Moreover, the Court has found no provision in the note or mortgage contract which would require the plaintiff to pay any other penalty, charge or interest on the accelerated balance. Of course, if the Court has misconstrued the note, mortgage, disclosure statement and defendant's arguments, so that the defendant would expect to exact additional payment of interest, costs or penalties on the accelerated principal, then the defendant would be in violation of 12 C.F.R. § 226.8(b)(6) for failure to disclose such penalty.[7] On the assumption

---

**5.** Moreover, if a rebate of precomputed interest is to be made upon acceleration, the method of calculating such rebate must be disclosed if the creditor refunds a greater amount upon voluntary prepayment of the loan than upon acceleration. *Id.* at 1332.

**6.** These decisions appear to overrule *Burley v. Bastrop Loan Co., Inc.,* 407 F.Supp. 773, 774–75 (W.D.La.1975), on this issue.

**7.** The defendant has called the Court's attention to 1976 regulations which it acknowledges would bar any penalty charge in connection

with acceleration of this loan upon resale of the premises, had the loan been extended after July 31, 1976.

With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower no Federal association shall impose a prepayment charge or equivalent fee in connection with the acceleration of the loan pursuant to the exercise of a due-on-sale clause.

12 C.F.R. § 545.6–11(g)(2).

Imposition of a prepayment charge upon exercise of a due-on-sale clause is prohibited

that such is not the case, partial summary judgment will be entered in favor of the defendant with respect to the plaintiff's fifth cause of action.

■ .In a related claim, the plaintiff charges in his first cause of action that "the statement does not disclose the fact that the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full." As stated above, the defendant denies a right to collect any unearned finance charges except for the 1% fee upon prepayment within the first five years of the loan, and the note and mortgage support this interpretation. Thus, 12 C.F.R. § 226.8(b)(7),[8] which requires disclosures of the method of calculating rebates, if any, of unearned interest upon prepayment, is inapplicable.

■ 12 C.F.R. § 226.8(b)(6)[9] requires [a] description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) with an explanation of the method of computation of such penalty and the conditions under which it may be imposed.

The defendant has clearly set forth its right to "a prepayment penalty of 1% of the original amount of the loan . . . if this loan is paid in full during the first five years." The "amount of the loan" is further identified in all of the documents executed in connection with this transaction as $41,350.00. Thus, the defendant has properly disclosed, in compliance with section 226.8(b)(6), that it is entitled to the 1% penalty in the event the loan is prepaid within the first five years. Accordingly, partial summary judgment will be entered in favor of the defendant with respect to the plaintiff's first cause of action.

Finally, the plaintiff alleges in his third cause of action that the defendant orally expressed a willingness to waive the 1% prepayment penalty if such prepayment results from sale of the property to a buyer who finances his loan with the defendant. The plaintiff regards the defendant's failure to disclose this offer in writing as a violation of 12 C.F.R. § 226.8(b)(6).

■ The Court finds that the defendant has adequately disclosed "any penalty charge that *may* be imposed by the creditor . . . for prepayment of the principal . . . and the conditions under which it *may* be imposed." [Emphasis added.] The lender is not required to identify the circumstances under which it may elect to

---

pursuant to § 545.6–11(g)(2) of this subchapter only with regard to loans made upon borrower-occupied homes after July 31, 1976; however, the Board looks with disfavor upon such practice respecting all loans made on the security of borrower-occupied homes, and believes that associations should abstain therefrom in connection with such loans made before such date, except in extraordinary circumstances.
12 C.F.R. § 556.9(b)(1).

8. 12 C.F.R. § 226.8(b)(7) requires
[i]dentification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.

9. For the distinction between Section 226.-8(b)(7) and Section 226.8(b)(6), *see* 12 C.F.R. § 226.818(b), which states in part:
Section 226.8(b)(6) relates only to charges assessed in connection with obligations which do not involve precomputed finance charges included in the obligation. It applies to transactions in which the finance charge is computed from time to time by application of a rate to the unpaid principal balance. Prepayment penalties which require disclosure under this section (which principally arise in connection with prepayment of real estate mortgages) occur when the obligor in such a transaction is required to pay separately an additional amount for paying all or part of the obligation before maturity. On the other hand, § 226.8(b)(7) is designed to encompass the disclosures necessary with regard to the prepayment of an obligation involving precomputed finance charges which are included in the face amount of an obligation.

forego its contractual rights. The Court does not agree with the plaintiff that 12 C.F.R. § 226.8(b)(6) requires disclosure of information beyond the maximum potential cost to a borrower for prepayment of the debt and warning as to the circumstances under which such costs could be incurred. Accordingly, partial summary judgment will be entered in favor of the defendant with respect to the plaintiff's third cause of action.

IT IS THEREFORE ORDERED that partial summary judgment is granted in favor of the plaintiff and denied as to the defendant with respect to the plaintiff's second cause of action.

IT IS FURTHER ORDERED that partial summary judgment is granted in favor of the defendant and denied as to the plaintiff with respect to the plaintiff's first, third and fifth causes of action.

IT IS FURTHER ORDERED that, as the plaintiff's fourth cause of action regarding 12 C.F.R. § 226.8(b)(2) and the annual percentage rate was not submitted for summary judgment by either party, the plaintiff shall inform the Court in writing within ten (10) days hereof whether that claim will be abandoned, settled or tried.