Carrie M. FRANKLIN, Appellant,

v.

COMMUNITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellee.

No. 79–1853.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1980.

Decided July 23, 1980.

Rehearing Denied Aug. 28, 1980.

Kenneth M. Chackes, Chackes & Hoare, St. Louis, Mo., for appellant.

Robert C. Jones, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, Mo., argued, Harold A. Tzinbert, Clayton, Mo., on brief, for appellee.

Before HEANEY and ARNOLD, Circuit Judges, and SACHS, District Judge.*

HEANEY, Circuit Judge.

Carrie M. Franklin brought an action under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, contending that Community Federal failed to make certain disclosures in connection with the issuance of a real estate mortgage loan to Franklin. The district court held that Community Federal's Truth in Lending disclosure did not violate TILA, and Franklin appeals. We reverse.

The case was submitted upon stipulated facts and the sufficiency of Community's "Estimated Disclosure Statement" is the only issue. Franklin contends that it is deficient in three respects. First, it stated that "all after-acquired property" would be subject to a security interest, while in fact

only real estate, improvements and fixtures were subject to such an interest. Second, it failed to disclose that the interest rate increased from 9.75% to 10% during a period of delinquency. Third, it failed to disclose the method of computing the unearned portion of the prepaid finance charges in the event of early repayment of the loan, and to disclose that the credit contract did not provide for the rebate of such charges.

The Truth in Lending Act is remedial legislation, the express purpose of which is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. Many specific items that must be disclosed, together with times and methods for disclosure, are set forth in the Act, and the Board of Governors of the Federal Reserve System is directed to prescribe regulations to carry out and effectuate the purposes of the Act. *Id.* at § 1604. In carrying out this directive, the Board has promulgated Regulation Z, 12 C.F.R. § 226.1 *et seq.*

*The After-Acquired Property Clause.*

Under TILA, if an extension of credit involves a security interest, the creditor must make "a clear identification of the property to which the security interest relates." 15 U.S.C. § 1639(a)(8); *see* 12 C.F.R. § 226.8(b)(5). Community Federal's loan to Franklin involved a security interest: a mortgage on the property Franklin purchased with the loan.

■ The disclosure statement provided:

This Association's Security Interest will be a First Deed of Trust on Property located at 1252 Sells, St. Louis, Mo 63147 and specifically described in a Deed of Trust to be executed by the Borrower. The documents executed in connection with this transaction cover *all after-acquired property* and also stand as security

* The Honorable HOWARD F. SACHS, United States District Judge for the Western District of Missouri, sitting by designation.

for future advances, the terms of which are described in the documents. [Emphasis added.]

The district court held and the parties agree that, under Missouri law, the security interest extends only to "other real estate, or fixtures and attachments to the mortgaged real estate." *Franklin v. Community Fed. Sav. & Loan Ass'n*, 478 F.Supp. 22, 24 (E.D. Mo.1979). The district court noted that after-acquired consumer goods could not be reached by the deed of trust and concluded that Franklin could not have been misled by the disclosure statement. While we agree that Community's lien would not extend to after-acquired consumer goods, we cannot accept the conclusion that the disclosure was not misleading. A consumer reading the disclosure could believe that a lien existed on any future purchases of real or personal property.

In similar cases, courts have held that a disclosure that "all after-acquired property" would be subject to a security interest does not satisfy TILA where it failed to inform the debtor that only consumer goods acquired within ten days of the loan transaction were subject to the lien under U.C.C. § 9–204(4)(b). *Pollock v. General Fin. Corp.*, 535 F.2d 295 (5th Cir. 1976); *Tinsman v. Moline Beneficial Fin. Co.*, 531 F.2d 815 (7th Cir. 1976). In both *Pollock* and *Tinsman*, the lenders disclosed to the debtors a security interest broader than that which in fact existed or could exist under state law. Here, the disclosure indicated a security interest in "all after-acquired property," which could conceivably encompass much more than is allowed under the terms of the mortgage or the U.C.C. as adopted in Missouri. The fact that Community Federal could not claim an interest in "all" after-acquired property essentially proves that Franklin could have been misled.

Community Federal urges that we distinguish this case from *Pollock* and *Tinsman* because this case involves a real estate mortgage loan rather than a loan for the purchase of personal property. We see no reason for such a distinction. In all three cases, liability is predicated on a failure to

clearly describe the security interest or the property to which it will attach. That failure is violative of TILA regardless of the nature of the underlying mortgage. *See Bartlett v. Commercial Fed. Sav. & Loan Ass'n of Omaha*, 433 F.Supp. 284 (D.Neb. 1977).

### The Increases in Interest Rate.

TILA and Regulation Z require creditors to disclose "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." 12 C.F.R. § 226.-8(b)(4); *see* 15 U.S.C. § 1639(a)(7). Franklin contends that Community Federal failed to disclose such a charge. While the disclosure statement indicated that the mortgagee may collect a "'late charge' not to exceed 5% of any monthly payment" in the event of a payment being fifteen days late, it did not reveal that the interest rate would increase to 10% during a period of delinquency of any of the debt.

The district court concluded that the interest rate increase was not required to be disclosed by section 1639(a)(7). It reasoned that the interest rate increase is not a charge "payable in the event of late payments" but rather is a charge payable in the event of nonpayment of the debt, accruing when an installment is never paid and the loan goes into default. A fair reading of the provision does not sustain this interpretation. The promissory note provides:

> *If default be made in the payment of any of said debt when due*, or in the event said real estate is conveyed or transferred, or should default be made in the performance of any covenant or agreement contained in the Deed of Trust given to secure this indebtedness, the Association, at its option, may declare all unpaid indebtedness evidenced by this note and by said Deed of Trust immediately due and payable, and thereupon, the undersigned agree to pay all costs of collection, including a reasonable attorney's fee. Failure at times to exercise such option shall not constitute a waiver of the right to exercise it later. *During the*

*period of delinquency, interest on the unpaid balance of the debt shall be at the rate of TEN per cent (10%) per annum.* [Emphasis added.]

■ In *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), the Supreme Court held that an acceleration clause was not a charge payable in the event of late payments, noting: "[D]elinquency charges are understood to be 'the *compensation* a creditor receives on a precomputed contract for the debtor's delay in making timely installment payments * * *.'" (quoting 1 CCH Consumer Credit Guide ¶¶ 4230, 4231 (1971)) (emphasis by the Court). We believe that the increase in interest rate is such compensation. It is a specifically ascertainable sum payable by the debtor to the creditor in the event of delinquency.

■ The Federal Reserve staff has expressed the opinion that a similar charge—the imposition of 7% interest on both open end and other than open end accounts in default—is a delinquency charge, "a *bona fide* late payment charge * * * that * * * is levied as a result of unanticipated delinquency." FRB Letter No. 1165, CCH Consumer Credit Guide ¶ 31,558 (1977) (Unofficial Staff Interpretation by E. Schmelzer, Chief, Fair Credit Practices Section). Although we are aware that unofficial staff interpretations are not entitled to the same respect given official interpretations of an administrative agency, *see Ford Motor Credit Co. v. Milhollin, supra,* 444 U.S. at 562–570, 100 S.Ct. at 795–799, we see no reason to substitute a different judgment for that of the Board staff in this case.

Some district courts have held that an increase in the interest rate on a loan balance unpaid at maturity is a "default, delinquency or similar charge" within the meaning of section 1639(a)(7). *Smith v. Chapman,* 436 F.Supp. 58 (W.D.Tex.1977); *Paer v. Aetna Fin. Co.,* No. C74–1144A (N.D.Ga., Apr. 12, 1976). That situation is closely analogous; each increase can fairly be described as a charge levied by the creditor because of the debtor's late payment. The

failure to disclose the increase before us violates TILA.

*Rebate of Unearned Finance Charges.*

■ Franklin alleges that Community Federal failed to make an

[i]dentification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.

12 C.F.R. § 226.8(b)(7).

Franklin contends that all or part of the mortgage insurance premium, a prepaid portion of the finance charge, *see* 12 C.F.R. § 226.4(a), (b), would be unearned in the event of prepayment of the loan in full. Although the premium was listed in Community Federal's disclosure statement, no disclosure as set forth above was made. Community Federal does not contend that the premium is not a "prepaid finance charge." The district court held that the mortgage insurance premium was not unearned and Community Federal advances that position here. It argues that once it dispensed the premium to the insurer, the premium was earned. We disagree. The full year's premium is not earned simply because it is paid to the insurer in one lump sum. The credit contract does not provide for a rebate of this charge if the loan is repaid during the first year. Because prepayment in full of the obligation during the first year would result in a portion of the prepaid finance charge being unearned, Community Federal should have disclosed the method of computing that portion and should also have disclosed the absence of a provision for rebate of that portion.

The judgment of the district court is reversed. Because the parties have stipulated as to the amount of statutory damages, the cause is remanded for a determination of attorney's fees.