Edwin GRANT and Lauretta Grant
Johnson, Plaintiffs-Appellants,

v.

IMPERIAL MOTORS,
Defendant-Appellee,

Nathaniel JOHNSON, Plaintiff-Appellant,

v.

IMPERIAL MOTORS,
Defendant-Appellee.

Johnnie Mae GORDON,
Plaintiff-Appellant,

v.

BACKUS CADILLAC–PONTIAC, INC.,
Defendant-Appellee.

No. 75–1352.

United States Court of Appeals,
Fifth Circuit.

Sept. 27, 1976.

Bobby L. Hill, Jack P. Friday, Jr., Savannah, Ga., for plaintiffs-appellants.

Griffin B. Bell, Jr., Savannah, Ga., for Imperial Motors.

Joseph B. Bergen, John Hewson, Assoc. Counsel, Savannah, Ga., for Backus Cad.

Sewell K. Loggins, Douglas N. Campbell, Atlanta, Ga., amici curiae, for Beneficial Finance Co.

Richard R. Cheatham, Marion H. Allen, III, Atlanta, Ga., amici curiae, for Fulton Nat'l Bank of Atlanta.

Before WISDOM and MORGAN, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge:

This is a joint appeal from the judgments of the United States District Court for the Southern District of Georgia, Savannah Division, granting the motions of defendants, Imperial Motors and Backus Cadillac-Pontiac, Inc. (Backus), for summary judgment in three actions for the statutory penalties and attorney's fees under Title I of the Federal Consumer Credit Protection Act (Truth in Lending Act). 15 U.S.C. §§ 1601 *et seq.* (1970). We affirm in part, and reverse and remand in part.

These cases arise out of the credit sales of three automobiles: plaintiff Edwin Grant[1] purchased a 1971 Buick Electra from defendant, Imperial Motors, on May 11, 1973; plaintiff Nathaniel Johnson purchased a 1970 Buick from the same defendant on June 25, 1973; and on October 29, 1973, plaintiff Johnnie Mae Gordon bought a new Pontiac from defendant Backus. All three purchases were financed by the seller. By November, 1973, each purchaser/debtor had instituted a separate suit against his or her respective seller seeking to recover for violations of the disclosure provisions of the Truth in Lending Act and Regulation Z promulgated thereunder. 12 C.F.R. § 226.1 *et seq.* (1976). After the complaints and answers were filed in the two Imperial Motors cases, all pleadings, briefs and orders were filed or entered jointly.

Each plaintiff initially charged the defendants with failure to properly disclose the "finance charge" and "annual percentage rate" as required by the Act. However, after each defendant had answered and filed motions for summary judgment, the plaintiffs responded with cross motions for summary judgment raising a number of specific violations of the Act and Regulation Z. While the printed form conditional sales contracts/disclosure statements utilized in these credit transactions were identical in all material respects, each defendant

---

1. Plaintiff Lauretta Grant Johnson signed as co-buyer in the Edwin Grant purchase.

was charged with different violations of the disclosure requirements of the Act and Regulation Z.[2]

On August 13, 1974, the district court granted partial summary judgments for the defendants in both cases. On September 4, 1974, the court entered its final order in the Imperial Motors cases, granting defendant's motion for judgment on the pleadings. The district court entered its final order in the Backus case on August 20, 1974, granting defendant's motion for summary judgment. Motions to reconsider the summary judgments were filed in the Backus case on September 13, and in the Imperial Motors cases on September 23. The district court entered a consolidated order denying plaintiffs' motions for reconsideration in all cases on December 4, 1974. Plaintiffs jointly appeal from this final order.

■ The principal issue raised by this appeal is similar to that presented in the recent case of *Martin v. Commercial Securities*, 539 F.2d 521 (5th Cir. 1976); whether an acceleration clause in a conditional sales contract is a term of credit required to be disclosed by section 128(a)(9) of the Act, 15 U.S.C. § 1638(a)(9), and section 226.-8(b)(4) of Regulation Z, 12 C.F.R. § 226.-8(b)(4) (1976).[3] The court below concluded with respect to this issue that the right of acceleration was not a § 226.8(b)(4) "default, delinquency, or similar charge" and consequently was not required to be dis-closed by the Act or Regulation Z. We affirm on the authority of our *Martin* opinion, *supra.*

■ Plaintiffs' second contention is that the forms employed by the defendants[4] fail to adequately describe the type of security interest claimed by the creditors in the consumer's property. Paragraph (2) of each of these disclosure statements provides that the

> Holder retains security title to and a security interest in property until total of payments and any other indebtedness now or hereafter due or owing by Buyer to Holder, however and whenever incurred, is paid.

Plaintiffs claim that this disclosure does not satisfy the requirements of section 129(a)(8) of the Act[5] and section 226.8(b)(5) of Regulation Z. The Act requires the creditor to provide

> [a] description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

The regulations require a

> description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit . . . .[6]

---

2. There was but one allegation common to both cases; the failure to include the cost of credit life insurance as a part of the finance charge in violation of section 226.4(a)(5) & (6) of Regulation Z. The district court found no violation of this subsection citing *Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971 (5th Cir. 1974); no appeal has been taken from this ruling.

3. This issue was first raised in the plaintiff's cross motion for summary judgment in the *Backus* case. However, it was later raised by plaintiffs Grant and Johnson in their motion to reconsider the judgment on the pleadings entered in the *Imperial Motors* cases. Record at 59–60.

4. This violation was asserted only against defendant Imperial Motors below.

5. 15 U.S.C. § 1639(a)(8) (1970).

6. 12 C.F.R. § 226.8(b)(5) (1976). The term "security interest" is defined by the regulation as

> Any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

*Id.,* § 226.2(gg).

The court below found that the defendants had adequately identified the type of security interest retained as required by the regulations.

Plaintiffs assert on appeal that defendants' description of the security interest retained is inadequate because it does not disclose the salient characteristic of any security interest, the creditor's right of repossession. We find, however, that neither the Act nor the Regulations impose upon a creditor the obligation to set forth a list of its rights as a secured party. The regulations require only a "description *or* identification of the *type* of security interest" retained by the creditor. The defendants have satisfied that requirement with their description of the "purchase money security interest" under the Uniform Commercial Code[7] retained by them in the automobiles which are the subject of these sales.

■ Third, plaintiffs maintain that the defendants[8] do not adequately disclose the method of computing the amount of any unearned finance charge that will be refunded to the customer in the event of prepayment in full of the obligation. The conditional sales contracts utilized herein provided in bold type, "In event of prepayment, refund of FINANCE CHARGE will be based on the sum of the digits method after first deducting an acquisition charge of $——— from the FINANCE CHARGE." Section 226.8(b)(7) of Regulation Z requires the

> [i]dentification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges *and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge* that will be credited to an obligation or refunded to the customer. If the credit contract does not

provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.[9]

Plaintiffs argue that the defendants' statement that they will refund unearned finance charges by "the sum of the digits method" in the event of prepayment, is meaningless to the consumer. Their argument is foreclosed, however, by the Federal Reserve Board's own formal interpretation of the requirements of section 226.8(b)(7). 12 C.F.R. § 226.818(c) states in full that:

> Section 226.8(b)(7) requires "identification" of the rebate method used on precomputed contracts. Many State statutes provide for rebates of unearned finance charges under methods known as the "Rule of 78's" or "sum of the digits" or other methods. In view of the fact that such statutory provisions involve complex mathematical descriptions which generally cannot be condensed into simple accurate statements, and which if repeated at length on disclosure forms could detract from other important disclosures, *the requirement of rebate "identification" is satisfied simply by reference by name to the "Rule of 78's" or other method, as applicable.* [Emphasis added].

We find the Federal Reserve Board's construction of its own regulation to be reasonable and its reasons for limiting the requirement of "identification" to be persuasive. *Bone v. Hibernia Bank,* 493 F.2d 135 (9th Cir. 1974).

■ However, the defendants' prepayment provisions present an additional problem. Although each prepayment clause referred to the deduction of an acquisition charge from the finance charge, the amount of any such charge was left blank in each of the contracts. Plaintiffs contend that the failure to disclose the amount of the acquisition charge is a *per se* violation of section 226.8(b)(7).

---

7. Ga.Code Ann. § 109A–9–107 (1962). A "purchase money security interest" is a security interest "taken or retained by the seller of the collateral to secure all or part of its price." . . . *Id.,* § 109A–9–107(a).

8. This claim was considered with respect to the Imperial Motors form only.

9. 12 C.F.R. § 226.8(b)(7) (1976) (emphasis added).

The district court found that no acquisition charge was involved and that none would have been deducted in the event of prepayment. Before reaching this conclusion the court stated: "It would have been clearer if a zero had been inserted in the blank so the form would read 'acquisition charge of $0. . . .' However, this Court is not persuaded that defendants are in violation of the Act merely by failing to insert a cipher."[10] While it may have been impermissible for the trial court to have made these findings of fact on motions for summary judgments, we nevertheless decline to disturb his conclusion of no violations but for a different reason.

Obviously, the contracts are incomplete since blanks as to a material matter, the deduction of an acquisition charge from the finance charge to be refunded in the event of prepayment, are left therein. We hold that these blanks may be rejected as surplusage.[11]

This results in the elimination from each contract, as a matter of law, of the qualifying clause: "After first deducting an acquisition charge of $_____ from the FINANCE CHARGE." To state the matter differently, the parties are conclusively presumed to have intended that such clauses be rejected as surplusage. Thus the debtors are afforded all of the relief to which they are entitled; the language of the disclosure statement has been construed most favorably for the consumers.[12]

We come at last to the fourth and final issue raised by this appeal. Plaintiff, Johnnie Mae Gordon, contends that defendant Backus failed to itemize and disclose the license, certificate of title, and registration fees chargeable herein as required by section 226.4(b) of Regulation Z, and thereby failed to correctly disclose the finance charge imposed in this transaction. Her complaint is that Backus listed a $16.00 charge for tag and title registration under the heading "official fees" in the "other charges" section of the disclosure statement.[13] She argues that because components of the "official fees" were not "itemized," the amount charged under that heading should have been included in the finance charge. We agree.

Section 226.4(b) provides in pertinent part as follows:

> If *itemized and disclosed to the customer,* any charges of the following types need not be included in the finance charge:
>
> .     .     .     .     .
>
> (4) License, certificate of title, and registration fees imposed by law.[14]

The requirements of this section are clear; unless the fees imposed by law in this transaction are *itemized,* they must be included in the computation of the finance charge. Backus has obviously failed to "itemize" the official fees and has not included the $16.00 fee as part of the finance charge. Consequently, Backus must be held liable for its failure to properly disclose the finance charge imposed in this transaction.

■ While the district court found that the defendant had failed to "itemize" the official fees as required by the Act and Regulation Z, it nevertheless refused to impose liability for what it referred to as a violation "miniscule in its scope and amount." However, once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability. The civil liability section of the Truth in Lending Act[15] provides that:

> Except as otherwise provided in this section, any creditor who fails to comply

10. Record at 50.

11. *See* 17 C.J.S. Contracts § 65.

12. Compare the foregoing conclusion with the conclusions in *Mourning v. Family Publications Service Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), and *Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740, 748 (1973).

13. Plaintiffs Grant and Johnson do not challenge Imperial Motors' disclosure of this $16.00 charge under the heading "Tag & Title." Brief for Plaintiffs-Appellants, at 19.

14. 12 C.F.R. § 226.4(b) (1976) (emphasis added).

15. 15 U.S.C. § 1640(a), *as amended.*

with *any requirement imposed under this part* or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000;

.　　.　　.　　.　　.

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.[16]

Therefore, unless one of the defenses provided in the Act is applicable to this transaction, the Court must award the successful litigant-consumer the statutory penalty set out above. *See Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740 (5th Cir. 1973). The district court erred in granting Backus' motion for summary judgment on this issue.

Accordingly, we affirm as to appellee, Imperial Motors, and reverse and remand as to appellee, Backus Cadillac-Pontiac, Inc., for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed and remanded.

---

**16.**　15 U.S.C. § 1640(a), *as amended* [emphasis added].