HAZEL G. HOLMES *v.* RUSHVILLE PRODUCTION CREDIT ASSOCIATION.

[No. 178S7. Filed January 12, 1978.]

*Robert Adams, Adams & Cramer,* of Shelbyville, *William H. Wolf, Wolf & Roback,* of Greenfield, for appellant.

*George J. Lewis, Ronald R. Pritzke, Lineback & Lewis,* of Greenfield, for appellee.

### DISSENT TO DENIAL OF TRANSFER

HUNTER, J.—I dissent from the denial of transfer.

## I. *Impairment of Collateral*

It is my view of the record that the actions of Rushville Production Credit Association clearly and unduly prejudiced the rights of Hazel G. Holmes [surety] in permitting Jack Downs [principal debtor] to apply $3,114 from the sale of the collateral upon an unsecured debt. This becomes cogently clear for the reason that the Uniform Commercial Code imposes an overriding duty of good faith on "every contract or duty within this act." That breach of good faith in permitting Jack Downs to pay an unsecured creditor under the Act should release Holmes to the extent of $3,114 in that the collateral [proceeds of the sale] was unjustifiably impaired. *See* Ind. Code § 26-1-3-606 (Burns 1974).

## II. *Disclosure Violations*

Additionally, I believe that Rushville Production Credit Association has failed to make adequate disclosures required in the context of consumer loans under Indiana's Uniform Consumer Credit Code (UCCC), Ind. Code § 24-4.5-1-101 to § 24-4.5-6-203 (Burns 1974) and under the federal Consumer Credit Protection Act, 15 U.S.C. § 1601-1681t (1968), as exemplified on the face of the exhibits in the record of this case before the trial court and on appeal.

As a point of departure, this excursion into the complex area of consumer credit will survey some overriding considerations regarding current consumer credit law. Generally, state law in this area of consumer credit (sales and loans) is governed by federal law where state law would provide lesser rights to the consumer. *See* 15 U.S.C. § 1681t (1968) ; Ind. Code § 24-4.5-3-301 (Burns 1974). Ind. Code § 24-4.5-1-102 (Burns 1974) states that one of the purposes of the Indiana Uniform Consumer Credit Code is to conform to the federal Consumer Credit Protection Act. The case at bar deals with disclosure requirements under the two aforementioned acts. It is important to note that *strict compliance* with disclosure requirements is what is mandated. *White* v. *Arlen Realty &*

*Development Corp.* (4th Cir. 1976), 540 F.2d 645. The *White* case states:

> "It is essential to note that Congress in creating this statutory scheme did not impose simply a general duty of 'adequate disclosure' upon creditors and provide for suit only by debtors able to show that they were 'aggrieved' by inadequate performance. Rather, Congress gave the debtor the right to specific information and therefore defined 'injury in fact' as failure to disclose such information." 540 F.2d 645, 649. *See also Grant* v. *Imperial Motors,* (5th Cir. 1976), 539 F.2d 506.

Disclosure requirements for consumer loans are found in Ind. Code § 24-4.5-3-302 (Burns 1974) ; Ind. Code § 24-4.5-3-306 (Burns 1974) ; 15 U.S.C. § 1631 (Supp. 1977) ; and 15 U.S.C. § 1639 (1968). Under Ind. Code § 24-4.5-3-306 (2) (g) and (h) (Burns 1974) and 15 U.S.C. § 1639 (a) (4) and (5), the *amount* of the finance charge and the correct interest rate, (i.e., figuring in prepaid charges such as credit life insurance) need to be disclosed to the consumer.

If the disclosure requirements are not met, then a consumer debtor has one year within which to bring an affirmative action (either in federal or state court) to recover an amount equal to twice the finance charge (no less than $100 nor more than $1,000) plus reasonable attorney's fees and costs. Ind. Code § 24-4.5-5-203 (Burns 1974) ; 15 U.S.C. § 1640 (Supp. 1977). Ind. Code § 24-4.5-5-203 (Burns 1974) states:

> *"Civil liability for violation of disclosure provisions.*—(1) Except as otherwise provided in this section, a creditor who, in violation of the provisions on disclosure (part 3), f the chapter on credit sales (chapter 2) [24-4.5-2-301—24-4.5-2-312] and the chapter on loans (chapter 3) [24-4.5-3-301—24-4.5-3-311], fails to disclose information to a person entitled to the information under this article [24-4.5-1-101—24-4.5-6-203] is liable to that person in an amount equal to the the sum of
>
>> "(a) twice the amount of the credit service or loan finance charge in connection with the transaction, but the liability pursuant to this paragraph shall not be less than one hundred dollars [$100] nor more than one thousand dollars [$1,000] ; and

"(b) in the case of a successful action to enforce the liability under paragraph (a), the costs of the action together with reasonable attorney's fees as determined by the court."

Thus, these statutes are said to allow enforcement by "private attorneys general." *See Shields* v. *First National Bank of Arizona,* (D.C. Ariz. 1972), 56 F.R.D. 442.

If the action is not brought within one year, it is lost under federal law, but not necessarily under Indiana law, because Ind. Code § 24-4.5-5-205 (Burns 1974) states:

*"Refunds and penalties as set-off to obligation.*—Refunds or penalties to which the debtor is entitled pursuant to this Part [24-4.5-5-201—24-4.5-5-205] may be set-off against the debtor's obligation, and *may be raised as a defense* to a suit on the obligation without regard to the time limitations prescribed by this Part." [Our emphasis.]

Applying the above rules to the case at bar, the following violations are apparent. First, the disclosure statement for Note No. 1 failed to state the total finance charge on the face of the statement, and was in direct violation of Ind. Code § 24-4.5-3-306(2)(g) (Burns 1974) and under 15 U.S.C. § 1639.

It was erroneous for the trial court to find that Rushville Production Credit Association *substantially complied* with the disclosure requirements for the reason, as noted *supra, strict compliance* is mandated by the federal law.

Furthermore, the record clearly shows as to Note No. 2, no financial disclosure statement whatever was given to Hazel Holmes or Jack Downs. This, in itself, is a violation of the *federal strict compliance standard, supra.*

The Court of Appeals has failed to come to grips with this crucial issue of disclosure, either in its original opinion or its supplemental opinion. Injury in fact is defined under federal law as the failure to disclose. To reiterate, this language clearly indicates that *strict compliance* with disclosure provisions is mandated. Yet, the Court of Appeals acquiesced

in the trial court's finding of *substantial compliance* as a substitute for *strict compliance* with regard to the financial disclosure statement on Note No. 1, when it stated:

> "The trial court found that PCA provided a proper disclosure statement prior to the execution of the first note—but not before the execution of the second note." 357 N.E.2d 734, supplemental opinion.

But as to each note there was no *strict compliance* with the disclosure provisions. Unequivocal errors and omissions appearing on the face of the record should not be ignored, as exemplified respectively by plaintiff's exhibit number 6 and the total absence of a financial disclosure statement as to Note No. 2. The financial disclosure statement as to Note No. 1 [plaintiff's exhibit number 6] failed even to substantially comply with disclosure requirements in that it left out the critical entry of the total finance charge. The Court of Appeals went on to say:

> "According due regard to the trial court's opportunity to assess the witnesses' credibility, we uphold these findings." 357 N.E.2d 734, supplemental opinion.

Written exhibits are not subject to this type analysis. The credibility of witnesses is not in question here. The question is whether the financial disclosure statements conformed with the *strict compliance* requirements of the law. Upon the most casual examination, it is abundantly clear they did not comply.

Since this action against the surety came after one year from the time of the two loans, the failure to properly disclose was correctly raised by Holmes under Ind. Code § 24-4.5-5-205 (Burns 1974). As to Note No. 1, I believe a $1,000 penalty, consisting of twice the finance charge limited by the $1,000 maximum should be allowed. In addition, I believe that twice the finance charge found by the trial court as to the second note would be the correct penalty—$651.

### III. *Attorney's Fees*

The real problem with Ind. Code § 24-4.5-5-205 (Burns 1974) appears to be that it does not clearly provide that attorney's fees and costs are recoverable where disclosure violations are raised as a matter of defense. The statute merely speaks in terms of "penalties and refunds" to which the debtor is entitled under Ind. Code § 24-4.5-5-203 (Burns 1974). It seems clear that attorney's fees and costs are to be assessed under Ind. Code § 24-4.5-5-205 (Burns 1974), and I recommend this result in light of the rule of construction, Ind. Code § 24-4.5-1-102 (Burns 1974) which states that the Uniform Consumer Credit Code is to "be liberally construed . . . to promote its underlying . . . policies." The major policy of the Uniform Consumer Credit Code is to "protect" a consumer borrower. Ind. Code § 24-4.5-1-102(a) (d) (Burns 1974). The Indiana Uniform Consumer Credit Code Practice Manual (ICLEF 1972) also indicates that attorney's fees should be available where disclosure violations are raised by way of defense. It states at page 86:

> "It is of some importance, however, that in any case where the creditor has violated the Code the debtor may recover attorney's fees. This probably means that the violation must be established as a defense to a claim of the creditor or must be established by an action where the debtor obtains some affirmative relief."

Finally, it is noted that reasonable attorney's fees have been allowed for meritorious appeal under the federal law. *Sosa v. Fite* (5th Cir. 1974), 498 F.2d 114.

In summation, it appears to me that the following amounts, as a minimum, should be set-off against the $21,976.09 owing to Rushville Production Credit Association:

1. $3,114 from the proceeds of sale of collateral allowed to be paid to unsecured creditors by Rushville Production Credit Association;

2. $1,000 as to the clearly insufficient disclosure on Note No. 1;

3. $651 as to the totally omitted disclosure on Note No. 2; and

4. Reasonable attorney's fees which should be properly found by the trial court on remand.

This case cries out for guidance from this Court in the area of consumer credit. It seems that this is a case requiring a remedy of transfer. Consequently, for all the reasons stated, I dissent from the majority and would grant transfer.

NOTE.—Reported at 371 N.E.2d 379.